In the Matter of the Estate of JOHN A. BATTIN, an Incompetent Person.

Supreme Court, Oneida County, May 10, 1939.

*Matthew T. Hale*, for the Veterans' Administration, for the motion.

*William B. Satterlee*, for Charlotte C. Battin, opposed.

CROSS, J. This is a motion brought on by an order to show cause why an order made by this court January 8, 1935, allowing Charlotte C. Battin, sister of the incompetent, the sum of eighty dollars per month for her care, support and maintenance as a dependent and needy sister of said incompetent should not be vacated.

The annual accounts of the committee as filed for the year 1938 show a balance in the estate of the incompetent of the sum of $16,900.20. Incompetent was first committed to the Utica State Hospital in October, 1921, and has ever since been confined in a hospital, being at present confined in the Veterans' Hospital at Northport, Long Island, where he receives his maintenance, plus $345 per year, representing monthly payments of war risk insurance.

The incompetent is sixty-four years of age and the needy sister is sixty-one years of age. The undisputed facts disclose that this now needy sister as a young woman forsook the boundless possibilities of a bright future to devote herself to the care of the mother of the incompetent: that as part inducement to such service the incompetent and another brother, now deceased, agreed to provide care and maintenance for their mother and the sister. One brother, now dead, provided by an insurance policy for the performance of the obligation assumed on his part.

The rule that " generosity is a voluntary attribute and cannot be enforced even by a chancellor," expressed in *Graf* v. *Hope Building Corporation* (254 N. Y. 1, at p. 4), does not apply here. The incompetent fully performed his promise during the period of his competency. The sister fully performed her promise and parted with the consideration on her part for the partially-performed obligation of the incompetent.

The conceded facts lay a foundation for litigation which might involve the estate of the incompetent in much expense and uncertainty of success. (*Matter of Forkel*, 8 App. Div. 397; *Matter of Horton*, 18 Misc. 406.) This thesis is valid when — as in this case — the estate of the one who was in part the direct cause of the present social need of the other, is sought to be applied to soften the natural and probable result of that same cause. The contribution of the incompetent was not a mere voluntary one: it was based on equitable and moral considerations and should be enforced since the sister fully performed her part of the agreement. This form of relief meets the exigency of the case in the least expensive way.

The long confinement of incompetent, his advanced age, the age and ill health of the sister, including the common desire of the

persons interested in sharing the estate, taken together with all the other facts and circumstances, lead to the conclusion that continuation of payment to the sister is equitable and in accord with the wish of the incompetent if he were now sane.

The incompetent's status as a veteran assures him all the care and comfort that is possible to give to one in his broken and tortured condition. During his lucid intervals it will be a source of consolation to him to sense the fact that his sister is enjoying the security that can only come to her by the contribution of this monthly allowance from his estate. This would be the reaction of a normal man with average notions of obligations to family and society. In a few short years the incompetent and his dutiful sister will have passed into eternity, where the material assets of his estate will no longer avail either of them.

The customary ethics of socialized community life strongly support the use to which this monthly payment is devoted. The concept that the family and society are obligated to respond to the social needs of the less fortunately circumstanced members of the social order is constantly expanding and finding new expression in the law of the land, as illustrated by divers social security statutes of State and Federal enactment.

The calculating reason and appreciative feeling which prompted the promise of the incompetent in the first instance and the performance of that promise during the period of his competency, plus the patriotic contribution made by him to the cause of his country, speak convincingly that it would be his present wish that this monthly allowance be continued. As a corollary the court is called upon to do what its ward would and should do were he a free agent.

It is not believed that the approval by the court of this expenditure upon these facts constitutes an innovation on the essential essence of well-established equitable principles.

The general principle which here points the path the court should follow finds expression in reported cases: *Matter of Heeney* (2 Barb. Ch. 326); *Matter of Flagler* (126 Misc. 764; 248 N. Y. 415).

While equity follows the law it is not dependent for vitality on precise legal precedents; nor is it circumscribed by the line of legal absolutism. Equitable rules are capable of expansion to meet the prevailing canons of justice and good morals. Proper recognition of the personal obligation and purpose of the incompetent, combined with social and economic consciousness, make plain the result at which the court must arrive in the instant application.

Motion denied.

Present order in accordance with this memorandum.